VIDAL RODRÍGUEZ, Plaintiff and Appellant, *v.* CARIBE HILTON HOTEL CORP. OF DELAWARE, d/b/a CARIBE HILTON HOTEL, Defendant and Appellee.

No. R-64-66.     Decided June 8, 1967.

*Ismael Delgado González* for appellant. *Roy J. Cohen, William Lespier,* and *Herber E. Lugo* for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

---

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On December 22, 1961, appellant filed a complaint against appellee, Caribe Hilton Hotel, claiming the amount of $3,881 for unpaid wages. The trial court on March 5, 1964 finally rendered judgment dismissing the claim.

Appellant began working for appellee on April 22, 1957, as cook, with a weekly wage of $43.20, at the rate of $1.08 an hour in a week of 40 working hours. He worked in one of the kitchens of the Hotel as a cook under the immediate supervision of another cook in charge of said kitchen and of the other cooks therein. As a matter of internal operation the kitchens of the Hilton had different categories, although such categories do not appear in the collective agreements, nor was a different compensation fixed in the latter for the cooks in the different kitchens.

As of March 13, 1958 appellant was put in charge of the kitchen where he worked because the night chef was transferred. This person named Guillermo Ruiz was earning at that time $92 a week, at the rate of $2.30 an hour. He had worked in the Hotel for over 10 years and had commenced with a weekly wage of $40. The difference up to $92 represented periodic raises due to his efficiency.

Appellant maintains that upon accepting to take charge of the kitchen wherein he worked until then under the supervision of Ruiz, he was offered, by the general chef of all the kitchens, to be paid the wage of $92 which Ruiz was earning, upon the termination of a probationary term of three months. That if it had not been for that offer, he would not have accepted the employment.

At that time a collective bargaining agreement was in effect between the parties which fixed a minimum compensation for cooks of $0.60 an hour. By a collective agreement which became effective on February 12, 1958, the minimum

wage of the cooks was increased to $0.82 an hour. By a third collective agreement signed on July 29, 1960, the minimum wage agreed upon for cooks was of $0.90 an hour, as of July 28, 1960, and on the basis of some adjustments subsequently made, the minimum wage from July 28, 1961 for cooks was of $0.94 an hour. This was the highest compensation fixed by collective bargaining agreement during the period involved in the claim. It is easily noted that since the very moment in which appellant commenced his employment in the year 1957 he earned much more than the highest minimum compensation agreed upon by collective bargaining agreement.

Ever since appellant took charge of the kitchen he received increases in his wage, sometimes because of the adjustments to the collective agreements, but the majority of the times because of voluntary increases by the management, from $1.08 an hour to $1.30, to $1.63, to $1.75, to $1.875, to $1.95 and up to $1.995 on July 28, 1961, for a weekly wage of $79.80, as compared to the initial one of $43.20, in a period of nearly 4 years. The record leaves no doubt as to the fact that appellee had bases of compensation in excess of the wages collectively agreed upon and that this compensation was consistent with service standards and efficiency.

According to the way the issue was elucidated before the trial court, the appellant seemed to rely on two premises in support of his claim: (1) that upon being called to take charge of the kitchen and having accepted, appellee contracted with him and agreed to pay him upon the termination of a three-month probationary term, the wage of $92 which his predecessor was earning and (2) that a certain clause of the Collective Agreement to which we shall refer further, duly interpreted, required that appellant be paid the same wage Ruiz was earning. The trial court even made statements on the first premise and reached the conclusion

that the general chef was not empowered to contract wages without the consent of his superiors in management.

■ If the record would satisfy us that actually there was such a contract, we would probably decide that the management was bound, by the actions of this employee who seemed to be empowered to do so. However the record does not convince us, in the degree of persuasion necessary to decide so, that it contracted with appellant to pay him immediately Ruiz' wage. One of the several factors to the contrary is that it was not consistent with appellee's usual standard of increasing wages and compensating on the basis of years of service and efficiency. It is unlikely that appellant would have been offered immediately the same wage which Ruiz was earning and which he had obtained after his efficiency was established during more than ten years of rendering services. The oral evidence itself in the record on that particular, considered in the manner most favorable to him, does not establish in the record that the compensation of $92 was offered to him without being liable to the showing of his efficiency in the new job.

■ On review, appellant seems to rely only on the second premise.[1] In the collective bargaining agreement of February 12, 1955 it was stated in Art. IX—General Provisions —subsection (j), that: "Whenever an employee is transferred to perform the duties of a higher *position* for more than two (2) consecutive working days, whether temporarily or permanently, said employee shall be paid the wage of the higher *position*; provided, however, that the provisions of this clause shall not be applicable when an employee passes to perform the duties of a higher *position* because the incum-

---

[1] In his brief, after referring to the " 'alleged contract', the validity of which was not in issue in the course of the hearing nor in the present appeal", appellant says: "From the complaint in this case the collective agreement appears clearly as the *only source* of such claim." (Italics ours.)

bent of said higher *position* is enjoying sick leave." (Italics ours.)

In the Collective Bargaining Agreement of February 11, 1958 it was prescribed in its Art. IX, subsection (j), in a manner identical with the previous one. In the Collective Bargaining Agreement of July 29, 1960, drafted in English, it was provided in its Art. VI, sec. 11: "Should any employee perform the duties of a higher *position* for more than two (2) consecutive working days, whether temporarily or permanently, said employee shall be paid the wage of the higher *position*, while performing the duties of said higher position."[2] (Italics ours.)

Appellant's position is that such provisions in the collective bargaining agreements compelled appellee to pay him the wage of $92, which Ruiz was earning, when he [appellant] took charge of the kitchen in substitution of Ruiz. We accept that this was considered as a promotion. In his brief appellant has made a praiseworthy effort in the light of the provisions of our Civil Code and the rules of the case law governing construction of contracts, rules which we do not believe should be analyzed at this moment, in order to convince us that that should be the correct interpretation of the above-copied provisions of the agreements. But in spite of it all, we cannot agree. There are three collective bargaining agreements signed in 1955, 1958, and 1960. We must assume that the contracting parties knew about the management policies as to compensating employees subject to efficient service. If the contracting parties had had the intention of agreeing to what appellant maintains, such clauses would have been couched in different terms. They would have made reference to the wage which the incumbent of the higher position was earning, and not to the position.

---

[2] This footnote is omitted since the English version of the citation of the collective bargaining agreement appears in the text of the opinion.

The three collective bargaining agreements contain a classification plan and as a result of the minimum wage fixed to each job, it is obvious that some jobs or positions are considered of a higher category than others. It is to said wage rates for the different job classifications contained in the collective bargaining agreements that the above-copied provisions must have referred. It may be noted that they cover not only a permanent tenure but also the temporary tenure of the higher position. With such provisions it was sought to prevent that an employee would perform indefinitely, with a temporary status, the job of greater responsibility of a higher position earning the lower wage agreed upon for a lower position. The aforesaid provision, as it appears in the last collective agreement of 1960, expressly provides that the right to earn the wage of the higher position shall exist while the employee is performing the duties of this position, which clause does not appear in the previous agreements.

An analysis of the evidence in the record and of the three applicable collective bargaining agreements leads us to the conviction that appellant's complaint is devoid of reason. Judgment will be rendered affirming the judgment of the trial court dismissing the complaint.

